**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

DARWIN WALDEN,

    Plaintiff,

vs.

CORNELL SMITH, MARY DICK,
DUSTIN LUTGEN and TOM CONLEY,

    Defendants.

No. 09-CV-3038-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

| | | |
|---|---|---|
| *I.* | *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *2* |
| *II.* | *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . | *2* |
| *III.* | *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . | *3* |
| *IV.* | *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *4* |
| |    *A.*    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *4* |
| |    *B.*    *Privilege System* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *5* |
| |    *C.*    *Ramadan 2007* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *5* |
| |         *1.*    *Imam Taha Tawil's recommendations* . . . . . . . . . . . . . . . . . | *5* |
| |         *2.*    *Plaintiff's recommendations* . . . . . . . . . . . . . . . . . . . . . | *6* |
| |         *3.*    *Lutgen's memorandum* . . . . . . . . . . . . . . . . . . . . . . . . | *6* |
| |    *D.*    *Plaintiff's Ramadan 2007 Experience* . . . . . . . . . . . . . . . . . . . | *7* |
| *V.* | *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *8* |
| |    *A.*    *Overview of Civil Rights Claims Under 42 U.S.C. § 1983* . . . . . . . | *8* |
| |    *B.*    *Free Exercise Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *9* |
| |    *C.*    *Other Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *11* |
| |         *1.*    *Qualified immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . | *11* |
| |         *2.*    *Mental and emotional damages* . . . . . . . . . . . . . . . . . . . | *12* |
| |         *3.*    *Declaratory and injunctive relief* . . . . . . . . . . . . . . . . . . . | *12* |
| |         *4.*    *Exhaustion and punitive damages* . . . . . . . . . . . . . . . . . . | *12* |
| |         *5.*    *Dick and Conley* . . . . . . . . . . . . . . . . . . . . . . . . . . . | *13* |
| *VI.* | *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *13* |

## I. INTRODUCTION

The matters before the court are the: (1) Motion for Summary Judgment (docket no. 27), filed by Defendants Cornell Smith ("Smith"), Mary Dick ("Dick"), Dustin Lutgen ("Lutgen") and Tom Conley ("Conley") (collectively, "Defendants"); (2) "Motion to Withdraw as Attorney Pursuant to *Anders v. California* and Iowa Rule of Professional Conduct 32:3.1" ("Motion to Withdraw") (docket no. 30), filed by Jeffrey M. Lipman, counsel of record for Plaintiff Darwin Walden; and (3) "Motion: Dismiss Counsel as Ineffective," ("Motion to Dismiss Counsel") (docket no. 31) filed pro se by Plaintiff.

## II. RELEVANT PROCEDURAL BACKGROUND

On June 15, 2009, Plaintiff initiated the instant action. On August 17, 2009, the undersigned issued the Initial Review Order (docket no. 3) and directed the Clerk of Court to file and serve the pro se Complaint (docket no. 4) on Defendants. On February 2, 2010, the court appointed Mr. Lipman to represent Plaintiff.

On March 22, 2010, Plaintiff filed an Amended Complaint (docket no. 25) against Defendants. Plaintiff alleged that Defendants violated his First Amendment right to the free exercise of religion. Plaintiff seeks the following relief: (1) a declaratory judgment stating that Defendants violated Plaintiff's constitutional rights; (2) an injunction prohibiting Defendants from continuing their unconstitutional behavior; (3) punitive damages; (4) compensatory damages; (5) costs; (6) attorney fees; and (7) interest. On April 1, 2010, Defendants filed an Answer (docket no. 26) to the Amended Complaint.

On May 20, 2010, Defendants filed the Motion for Summary Judgment. On June 25, 2010, Mr. Lipman filed the Motion to Withdraw. On July 2, 2010, Plaintiff filed the Motion to Dismiss Counsel. Plaintiff did not file a resistance to the Motion for Summary Judgment. On July 15, 2010, the court entered an Order (docket no. 32) directing the parties to file supplemental briefing on certain aspects of Plaintiff's First Amendment claim. On July 23, 2010, Defendants filed a "Supplemental Memorandum in Support of

Defendants' Motion for Summary Judgment" ("Supp. Mem.") (docket no. 33). On August 3, 2010, Plaintiff, proceeding pro se, filed a "Supplemental Briefing in Response to Defendants' Submission" ("Supp. Brief"). On August 6, 2010, Mr. Lipman filed a "Plaintiff's Supplemental Brief and Renewed Motion to Withdraw as Attorney Pursuant to Anders v. California" ("Second Supp. Brief").

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has

successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## IV. FACTS[1]

### A. Parties

From September 15, 2005 until August 28, 2008, Plaintiff was an inmate incarcerated at the Fort Dodge Correctional Facility in Fort Dodge, Iowa ("Fort Dodge Facility"). Plaintiff is a practicing Muslim. While incarcerated at the Fort Dodge Facility, Plaintiff was the resident imam. On August 28, 2008, Plaintiff was transferred to the Mount Pleasant Correctional Facility in Mount Pleasant, Iowa ("Mount Pleasant Facility"), where he is currently incarcerated.

Defendants are or were affiliated with the Fort Dodge Facility. At all times relevant to the instant action, Defendants held the following positions at the Fort Dodge Facility: Smith was the Warden, Dick was the Associate Warden of Treatment, Lutgen was the Treatment Manager and Conley was a Unit Manager.

---

[1] Because Plaintiff did not respond to any of Defendants' Statements of Material Facts (docket no. 27-2), the court deems them admitted. *See* LR 56(b) ("The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.").

4

### B. *Privilege System*

For security purposes, the Fort Dodge Facility uses a privilege level system to classify each of its inmates. An inmate's privilege level determines his housing as well as his ability to engage in certain activities. One of the goals of the privilege system is to encourage good behavior among the inmates. The higher the privilege level, the more privileges an inmate can enjoy. The Fort Dodge Facility has five privilege levels.

From June 11, 2007 until September 25, 2007, Plaintiff was classified at privilege level 2. Privilege level 2 inmates "are only allowed on the yard at certain times and these times are less frequent than higher privilege level inmates." Affidavit of Dustin Lutgen (docket no. 27-3), at 30, ¶ 3. After an inmate on privilege level 2 becomes eligible to hold a job at the Fort Dodge Facility and adds his name to the job list, he may then be elevated to privilege level 3. On September 25, 2007, the Fort Dodge Facility re-classified Plaintiff to privilege level 3.

### C. *Ramadan 2007*

Plaintiff observes Ramadan, which is the Islamic month of fasting and when participating Muslims refrain from eating or drinking from dawn until sunset. In 2007, Ramadan was observed from September 13 until October 11.

#### 1. *Imam Taha Tawil's recommendations*

Imam Taha Tawil, the Muslim consultant for the Iowa Department of Corrections, sent a memorandum to staff at the Fort Dodge Facility about observing Ramadan 2007. The memorandum stated, in relevant part:

> The following guidelines are expected to be followed by participating inmates:
>
> * * *
>
> **2.      Noon prayer**
>
> Please note that Muslims pray five times mandatory daily prayers, and these prayers could be done collectively or

> individually except Jum'ah (Friday) noon prayer should be congregational. During [Ramadan, Muslims] try their best to pray all five daily prayers together. Therefore [general population] inmates should be allowed to meet for the noon mandatory prayer in the chapel or any other room available, from 1:00 [p.m.] to 2:00 [p.m.] every day for the month long fasting of [Ramadan]. The noon prayer can be supervised by one of the chaplains or if absent, a staff member.

Appendix ("App'x") (docket no. 27-3), at 23 (emphasis in original).

Additionally, Lutgen discussed the Fort Dodge Facility's Ramadan accommodations with Imam Taha Tawil. From those conversations, Lutgen learned and was aware that Muslims have five mandatory daily prayers during Ramadan, which could be conducted communally or individually, with the exception of one prayer on Friday, Jum'ah, which was to be conducted communally. Imam Taha Tawil advised that inmates should attend community prayers "during their approved yard times." *Id.* at 30. Lutgen and Imam Taha Tawil agreed that, "[i]n the event the inmate did not have yard time during the daily community prayer times[,] the inmate could pray individually in his cell." *Id.* In other words, "the privilege level system was not to be overridden by [Ramadan] prayers," but rather, would govern which inmates could attend the community prayers. *Id.*

### 2. *Plaintiff's recommendations*

On August 7, 2007, Plaintiff sent a letter to Lutgen and David Costello, the Security Warden Associate, in which Plaintiff made a number of requests for Ramadan 2007. Plaintiff requested: (1) "[m]orning showers between 5:00 a.m. to 7:00 a.m. daily"; (2) a "sack breakfast" or early breakfast before sunrise, as well as one evening meal; and (3) "a room where 5 prayers, reading the Quran, studying, and watching Islamic videos can be done." *Id.* at 26.

### 3. *Lutgen's memorandum*

On September 11, 2007, Lutgen sent a memorandum to the Fort Dodge Facility's staff and inmates. The memorandum set forth the Ramadan 2007 procedures and a list of

each participating inmate and his privilege level. Plaintiff was listed at privilege level 2. The memorandum also stated: "[o]ffenders are permitted to attend community prayer during their approved yard time. Offenders may participate in individual prayer if the yard is closed to them due to their privilege level." *Id.* at 34.

### D. Plaintiff's Ramadan 2007 Experience

On September 13, 2007, Ramadan 2007 began. At that time, Plaintiff was at privilege level 2. Plaintiff was job eligible but had not yet added his name to the job list. Privilege level 2 inmates have a specified yard time that did not coincide with the Ramadan daily community prayers. Despite the fact that Plaintiff's privilege level did not permit him to attend the Ramadan community prayers, the Fort Dodge Facility inadvertently permitted Plaintiff to attend the community prayer services from September 13 through September 17. On September 17, Lutgen learned that Plaintiff had been attending the Ramadan community prayers despite his ineligible status and directed that Plaintiff discontinue attendance at the community prayer services.

That same date, Plaintiff requested that Lutgen permit him to attend Ramadan community prayers. Lutgen denied Plaintiff the privilege of community prayer because his privilege level 2 status "restrict[ed him] to 1 religious service per week" and "restricts the amount of available yard time." *Id.* at 35. Lutgen noted that Plaintiff had "been job eligible for over 2 months" and "suggest[ed] that [he] find a job so [he could] get classified off of [privilege level 2], which w[ould] increase [his] available yard time." *Id.* Although Plaintiff was unable to attend daily community prayer services, Lutgen permitted Plaintiff to attend the community Ju'mah prayer service on Fridays.

After receiving Lutgen's response, Plaintiff filed a grievance with Warden Smith that restated his wish to attend community prayer services during Ramadan.[2] Warden

---

[2] The court omits additional facts related to the grievance procedure, as well as facts related to an alleged misappropriation of funds for the Fort Dodge Facility's Muslim
(continued…)

7

Smith agreed with Lutgen's conclusion and encouraged Plaintiff to add his name to the job list to enable him to move to privilege level 3.

On September 25, 2007, Plaintiff was elevated to privilege level 3. Subsequently, he was permitted to attend the Ramadan community prayer services. Thus, Plaintiff was only prevented from attending Ramadan community prayer services from September 17 until September 25, 2007.

## *V. ANALYSIS*

Plaintiff's sole claim is that, under color of law, Defendants violated his right to free exercise of religion under the First Amendment to the United States Constitution when they restricted his participation in community prayers during Ramadan 2007. Defendants argue that the court should grant the Motion for Summary Judgment and dismiss the Amended Complaint because: (1) Defendants did not violate Plaintiff's First Amendment rights; (2) Plaintiff did not suffer any physical injury; (3) Plaintiff failed to exhaust his claims; and (4) Defendants are entitled to qualified immunity. Additionally, Defendants argue that Plaintiff is not entitled to punitive damages, injunctive relief or declaratory relief and that Dick and Conley must be dismissed because they had no involvement in the alleged constitutional violation.

### *A. Overview of Civil Rights Claims Under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory [. . .] subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

---

² (…continued)
inmates, because they are not relevant to the analysis.

8

Congress designed § 1983 to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, § 1983 itself does not provide any substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a 'violation of § 1983,' for § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that § 1983 "merely provides a method for vindicating federal rights elsewhere conferred") (internal quotation marks omitted); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 3 (1980) (stating that "Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. Free Exercise Claim

Defendants argue that the court should dismiss the Amended Complaint because the undisputed facts show they did not violate Plaintiff's constitutional right to free exercise of religion. Plaintiff claims that Defendants violated his free exercise rights when they prevented him from attending the daily community prayers during Ramadan 2007.

"While prisoners retain their constitutional rights, they are subject to limitations on those rights 'in light of the needs of the penal system.'" *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 831 (8th Cir. 2009) (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004)). "An inmate's constitutional claims are evaluated under a lesser

standard of scrutiny, even though such claims would receive strict scrutiny analysis if brought by a member of the general population." *Id.* (citing *Murphy*, 372 F.3d at 982). "A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is reasonably related to legitimate penological interests" under the factors in *Turner v. Safley*, 482 U.S. 78, 81 (1987). *Id.* (citations and internal quotation marks omitted).

> The *Turner* factors are:
>
>> First, [the court] ask[s] whether there is a valid rational connection between the prison regulation and the government interest justifying it. Second, [the court] consider[s] whether there is an alternative means available to the prison inmates to exercise the right. Third, [the court] examine[s] whether an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources. Fourth, [the court] evaluate[s] whether there is an alternative that fully accommodates the prisoner at de minimus cost to valid penological interests.

*Murphy*, 372 F.3d at 982-83 (internal citations and quotation marks omitted).

The undisputed facts show that Defendants prevented Plaintiff from attending the Ramadan 2007 community prayers from September 17 until September 25 but not the Ramadan 2007 community Jum'ah prayers. Defendants argue that, because the Muslim religion permits community *or* individual daily prayers during Ramadan, Defendants did not violate Plaintiff's free exercise of religion when they barred him from attending the Ramadan 2007 community prayers. Defendants are correct. Imam Taha Tawil stated that the five daily Ramadan prayers "could be done collectively or individually[.]" App'x at 23. "A prisoner need not be afforded his [or her] preferred means of practicing his religion as long as he is afforded sufficient means to do so." *Murphy*, 372 F.3d at 983. Therefore, to the extent the Amended Complaint alleges a violation of Plaintiff's First

Amendment right to attend community prayers five times a day during Ramadan 2007, that claim shall be dismissed.[3]

## C. Other Arguments

Defendants also raise a number of other arguments to dismiss certain aspects of Plaintiff's claim. The court analyzes these arguments below.

### 1. *Qualified immunity*

Defendants argue qualified immunity bars Plaintiff's claims. "Government officials are generally afforded qualified immunity under section 1983 when performing discretionary functions unless their conduct violates clearly established law." *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010) (citation omitted). The Eighth Circuit Court of Appeals requires a two-step inquiry in a qualified immunity analysis, determining: (1) "whether the facts, viewed in the light most favorable to [Plaintiff], establish a violation of a constitutional right"; and (2) "whether the relevant constitutional right was clearly established at the time of the alleged violation." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court recently made it clear that [the court is] allowed to exercise [its] 'sound discretion' to decide which qualified immunity prong [it] address[es] first, 'in light of the circumstances in the particular case at hand.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 818 (2009)). For the reasons stated above, the court finds that Defendants did not violate any law. Accordingly, qualified immunity bars Plaintiff's claim.

---

[3] The record clearly establishes that Defendants permitted Plaintiff to attend the community Ju'mah prayer service on Fridays. Because Plaintiff was able to fully participate in this aspect of Ramadan, the court does not consider it in its analysis of Plaintiff's First Amendment claim.

### 2. *Mental and emotional damages*

Defendants argue that recovery of compensatory damages is barred by 42 U.S.C. § 1997e(e). Section 1997e(e) provides: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Section 1997e(e) applies to First Amendment claims. *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004). The Amended Complaint does not allege any physical injury. Therefore, to the extent the Amended Complaint seeks damages for mental or emotional injury, Plaintiff is barred from recovering those damages.[4]

### 3. *Declaratory and injunctive relief*

Defendants argue that Plaintiff's transfer to the Mount Pleasant Facility mooted his claims for declaratory and injunctive relief. The court agrees. "[A]n inmate's claims for declaratory and injunctive relief to improve prison conditions [are] moot when [the inmate is] transferred to another facility and [is] no longer subject to those conditions" giving rise to the § 1983 claim. *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (citing *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)). Accordingly, Plaintiff is barred from obtaining declaratory or injunctive relief.

### 4. *Exhaustion and punitive damages*

Defendants also argue that: (1) Plaintiff failed to exhaust the grievance procedure at the Fort Dodge Facility; and (2) Plaintiff's punitive damages claim is barred due to lack of evidence of willful or malicious conduct. Because the court dismisses the Amended Complaint for the reasons stated above, the court declines to address these arguments.

---

[4] The court notes that § 1997e(e) "'is merely a limitation on damages,' not an element of the § 1983 lawsuit." *Kahle v. Leonard*, 563 F.3d 736, 742 (8th Cir. 2009). Therefore, its application would not bar the recovery of nominal damages. *Id.* (citing *Munn v. Toney*, 433 F.3d 1087, 1089 (8th Cir. 2006)). Section 1997e(e) also does not bar recovery of punitive damages, injunctive relief or declaratory relief. *Id.*

### 5. *Dick and Conley*

Plaintiff failed to assert any factual allegations against Dick or Conley. Because Plaintiff failed to allege that these Defendants were personally involved with or had direct responsibility for the incidents that injured him, the court shall dismiss them from this action. *See Gully v. Maynard*, 218 F. App'x 551, 552 (8th Cir. 2007) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)) (dismissing defendants from the action due to "lack of complaint allegations" against them).

## VI. CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED**:

(1) The Motion for Summary Judgment (docket no. 27) is **GRANTED**;

(2) The Amended Complaint (docket no. 25) is **DISMISSED** with prejudice;

(3) The Motion to Withdraw (docket no. 30) is **GRANTED**;

(4) The Motion to Dismiss Counsel (docket no. 31) is **DENIED** as moot;

(5) The Clerk of Court is **DIRECTED** to enter judgment in Defendants' favor and **CLOSE** this case.

**DATED** this 30th day of August, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA